# Wheeling.

## Snyder, *et al. v.* P., C. & St. L. Railway Co.

(Absent, Moore, Judge).

Decided July 7, 1877.

1877.
June Term.

1. In an action of trespass on the case brought by the plaintiffs against the defendant the count of the declaration upon which the case was tried alleges, "that on the 29th of October, 1874, and before and since that time, they were seized and possessed of a certain tract of land in said county of Brooke, in the state of West Virginia, situate on the waters of Harmon's creek, containing about two hundred and forty acres, being the same farm owned by David Snyder, deceased, late of said county, and known as the Snyder Mill property, except that part of said tract of land which is now and has been for a long time owned by the defendant, consisting of a strip of said land one hundred feet in width, running through said farm, and which is used by said defendant for its railroad, except the ground on which the water grist mill stood, the said land of the plaintiffs being partly cleared and in a high state of cultivation, and the residue thereof being woodland, with valuable timber growing and being thereon, next prior to the grievances hereinafter named. And the said defendant for the last five years and more was and still is possessed and in the occupation of the said strip of land of one hundred feet in width, running through said lands of plaintiffs as aforesaid, on which said land of defendant it has constructed a line of railroad which it now operates and has operated for a long time past, to-wit: for more than five years last past, by continuously running trains of cars over said line of road, drawn by locomotives, propelled by fire and steam, and the said defendant, by reason of the possession of its said parcel of land, and its occupation and use for railroad purposes as aforesaid, of right ought to have prevented the dried grass, dried leaves and weeds, and other combustible matter from being and accumulating on its said line of road and its said land, to pre-

vent the ignition of said combustible matter by fire from the locomotives of said defendant, used on its said railroad, and the spread of fire by the ignition aforesaid to and over the said lands of said plaintiffs, and doing damages thereto.   Yet the said defendant, well knowing the premises, but contriving and wrongfully and unjustly intending to injure and aggrieve the said plaintiffs in that behalf whilst the said plaintiffs and defendant were so respectively possessed of their said respective tracts of lands as aforesaid, to-wit: on the 29th day of October, 1874, wrongfully and unjustly suffered and permitted dried grass, dried weeds and dried leaves, and other combustible matter to be and accumulate on its said land and railroad aforesaid, and thereby on the day and year last aforesaid fire emitted and dropped from a locomotive of said defendant on said land and railroad of defendant, ignited the said dried grass, dried weeds, dried leaves and other combustible matter aforesaid, which caused a conflagration thereof, which said conflagration spread rapidly to and over the said adjoining lands of said plaintiffs to such an extent that said conflagration destroyed about two and half miles of rail and board fence, worth $1,500,00, and growing timber and other forest timber, and injured the same to the extent and value of $1,200.00, and burned and injured the pasture and growing wheat on said tract, and rendered the same useless to the amount of $300.00, &c.   The damages in this count are laid at $7,000.00.   HELD:

1877.<br>June Term.<br>———<br>Snyder <em>et al.</em><br>v.<br>P., C. & St. L.<br>Railway Co.

That said count shows legal cause of action, and is good upon general demurrer. and that it was not error in the circuit court to overrule a demurrer thereto.

2. It was not necessary for the plaintiffs to aver in the declaration that they were not guilty of negligence which contributed to the burning of their property, or in other words that they were not guilty of contributory negligence

3. Negligence in the plaintiffs contributing to the loss is a defense at common law, the benefit of which the defendant may avail himself in a proper case.

4. The plea in the cause was not guilty, on which issue was joined, and at the trial before the jury after the evidence was given to the jury by both parties, the defendant's counsel asked the court to instruct the jury as follows, viz:

"1st Proposition—For a railroad company to permit grass and weeds to grow and remain upon its right of way, out side of its water table, and more than four feet from its track, through a sparsely settled region of country and not near to valuable buildings, when such grass and weeds are in such quantity

1877.
June Term.

Snyder et al.
v.
P., C. & St. L.
Railway Co.

and so small in growth that they cannot be mown, is not negligence, and that negligence is the want of ordinary care in this case, by which is meant such care as men of ordinary care and prudence use under like circumstances.

2d Proposition.—Unless the plaintiffs have proved by a preponderance of evidence that the defendant failed to keep its ground at the place where this fire started, or from where it spread upon the plaintiff's land, as free from grass or weeds or leaves as other railroads managed with care and prudence are kept, then the plaintiffs cannot recover in this action, and your verdict must be for the defendant.

3d Proposition - The burden of proof is on the plaintiff, and before he can recover in this action, he must satisfy you by a preponderance of evidence that the defendant was guilty of negligence in this matter at issue in this case, which is: Did the defendant, on the 29th day of last October, keep its railroad ground, at the place where the fire was on said railroad ground, as free from grass, weeds and leaves, or either of them, as men of ordinary care and prudence do under the same or similar circumstances ?

4th Proposition –If the plaintiffs knew the place where this fire started, and from whence it spread to their land was a place where fire had often caught from sparks emitted from the defendant's locomotives in their ordinary use in passing, and permitted grass and weeds to grow and remain upon their lands adjoining said place to the same extent the defendant allowed grass and weeds to grow and remain upon its adjoining lands, the plaintiffs are guilty of contributory negligence, and cannot recover in this action.

5th Proposition The question whether the locomotive was in good order or well managed is not in this case, and you will, therefore, wholly disregard all that has been heard or said upon that subject.

But the court refused to give the first, second and fourth instructions so asked by the defendant, and the latter portion of the third. HELD:

For reasons stated in the opinion of the court filed in the cause, that the circuit court did not err in refusing to give to the jury the first, second and fourth instructions so asked by the defendant's counsel, and the latter portion or clause of the third.

5. The true question involved in the issue touching the matter of negligence on the part of the defendant to be determined by the jury was, *from the evidence and all the circumstances and surroundings including the dryness of the time, did the defendant*

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

*permit such an accumulation of grass, weeds or leaves of a combustible nature within its right of way at the point where the said fire occured, exposed to ignition by its engines, as would not be permitted or done by a cautious and prudent man upon his own premises if exposed to the same hazard from fire as the accumulation of dry grass, weeds or leaves upon the said right of way of the defendant.*

6. Persons occupying farms along railroads are entittled to cultivate and use them in the manner customary among farmers, and may recover for damages by fire resulting from the negligence of a railway company although they have not plowed the dry grown grass or taken other like unusual means to guard against such negligence.

7. Negligence of the plaintiffs in such cases which precludes a recovery. is where in the presence of a *seen* danger (as where the fire has been set) he omits to do what prudence requires to be done under the circumstances for the protection of his property, or does some act inconsistent with its preservation. Where the danger is *not seen*, but anticipated merely, or dependant on future events (such as the future continuance of defendants' negligence) plaintiff is not bound to guard against it by refraining from his usual course (being otherwise a prudent one) in the management of his property and business.

8. In the exercise of his lawful rights, every person has a right to presume that every other will perform his duty and obey the law, and it is not negligence for him to assume that he is not exposed to a danger which can only come to him through a disregard of law on the part of some other person.

9. A person owning land contiguous to a railroad, is not obliged to keep the leaves falling from his trees, from being carried by the wind to such railroad; nor to keep his lands clear of leaves and dry grass or weeds, or other combustible matter; nor on failure to perform such acts, does he become contributory to the production of a fire originating in the carelessness, on its own land, of a railroad company.

10. If the place where the fire started, and from whence it spread, was a place where fire had often caught from sparks from defendant's locomotives in their ordinary use in running, it tends to show a negligent habit on the part of the defendant in suffering combustible material to accumulate on its land at that place instead of amounting to a reason why the plaintiffs should not recover, although the plaintiffs knew of such fires.

11. It is unnecessary that there should be a separate bill of exceptions taken and signed to each ruling or opinion of the court excepted to, to entitle the party excepting to such opinion or ru<sup>l</sup>

3

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

ing to have the same, reviewed by an appellate court. Exceptions of a party to opinions of the court, though they may be numerous, may be incorporated into one bill of exceptions.

This was a writ of error to a judgment of the circuit court of the county of Brooke, rendered on the 29th day of December, 1875, in an action of trespass on the case, then pending in said circuit court, in which David Snyder and others, were plaintiffs, and the Pittsburgh, Cincinnati and St. Louis Railway Company, were defendant. The writ of error was allowed upon the petition of the defendant.

The Hon. Thayer Melvin, Judge of the first judicial circuit, rendered the judgment below.

A sufficient statement of the case is given by HAYMOND, JUDGE, who delivered the opinion of the Court.

*J. Dunbar*, for the defendant below and plaintiff in error :

Land owners are as much bound in law to keep their lands, adjacent to a railway, free from weeds, grass and other combustible materials as railroads are. *Kansas Pacific R. R. Co.* v. *Butts*, 7 Kan., 308 ; *Illinois Cen. R. R. Co.* v. *Mills*, 42 Ill., 407 ; *O. & M. R. R. Co.* v. *Shanefelt*, 47 Ill., 497.

*G. W. Caldwell*, for plaintiff below and defendant in error :

The demurrer to the declaration is general and, therefore, if one count is good, it was proper to overrule the demurrer. *Henderson* v. *Stringer*, 6 Gratt. 130 ; *Beckwith* v. *Mollohan*, 2 W. Va., 477 ; 8 W. Va., 63.

The facts proven at the trial below are not properly certified and hence the appellate court should not grant a new trial. *Dusenberry* v. *Alfred*, 5 W. Va., 115 ; *Newland* v. *Beard, et al.*, 6 W. Va., 110 ; 13 Gratt., 587 ; 5 Gratt., 141 ; 6 Gratt., 197, 287 ; *Davis* v. *Henry*, 7 W. Va., 715 ; 3 W. Va., 386 ; 8 W. Va., 259 ; 8 W. Va., 584.

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

Where evidence is conflicting the jury alone can decide as to its weight. 2 Gratt., 18.

The first instruction asked for by defendant is on an abstract question and hypothetical, and therefore properly refused. 10 Gratt., 236; 9 Pet., 292, 541; 12 Pet., 84.

Instructions 1, 2, 4 and latter part of 3 do not so state the facts as to show the relevancy to the issue. 11 Gratt., 300.

As to the question of negligence refer to : 1 Add. on Torts, 302, 306 and 307; 7 Am. R., 69; 6 Am. R., 595, 643; 20 Am. R., 356; 10 Am. R., 389; 9 Am. R., 63; 19 Am. R., 618 ; Sherman & Redfield, on Neg., §327, 330, 332 and 333.

*Eugene Tarr,* for the plaintiff below and the defendant in error :

The counts in the declaration are properly joined. Chitty on Pl., p. 200, vol. 1.

Record is informal and the bill of exception not made and taken in conformity with the statutes of this State.

The reduction of the jury's verdict from $1,110.00 to $1,000,00 by judge of the court below is legal both by common and statute law. Broom & Hadley's Com., vol. 2, p. 268; Constitution W. Va., art. 8 sec. 36; Code 1860, chap. 16, §1; Code 1868, chap. 131, §15.

Usage on other railroads is not pertinent testimony nor conclusive. Sherman & Redfield on Negligence, p. 12, 13, n. 2.

Negligence is synonymous with carelessness in legal phraseology. S. & R. on Neg., p. 9, 12, 13, citing n. 2, 47 Pa. St. 300.

Usage on other rail road does not establish a rule of action or line of conduct. S. & R. on Neg., 12, 13 citing n. 2; *Philadelphia & Reading R. R. Co.* v. *Spearen,* 47 Pa. St. 300; *Vanderpools* v. *Hasson,* 28 Barb., 196 ; *United States* v. *Taylor,* 5 McL., 242; *Sheffield* v. *Rochester &c. R. R. Co.,* 21 Barb. 339; *Carlis* v. *Rochester &c. R. R. Co.,* 20 Barb. 282; *Galena &c. R. R. Co.,*

v. *Yarwood*, 17 Ill. 509, 519; *Galena &c. R. R. Co.* v. *Dill*, 22 Ill. 264, 271;

Plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on part of defendant and resulting in injury to himself. S. & R., on Neg., p. 15; 12 Minn., 357; 2 Hurlst, & Co., 722.

Negligence or want of care is a question for the jury: S. & R., on Neg., 13; 14 Conn., 566; 40 Mo., 151; 59 Pa. St., 259; 61 Iowa, 58; *Toledo &c. R. R. Co.* v. *Foster*, 43 Ill., 415.

Contributory negligence is a question for the jury and not for the court: S. & R., p. 31, 37, 404, 405 and n.; 26 Wis., 223; 47 Ill., 497; 51 Ill., 78; 47 Ill., 505; 28 Ill., 9; 42 Ill., 407; 49 N. Y., 420; 30 Iowa 78; Addison on Torts, vol. 1, p. 304-5.

Distance from the place where the fire originated does not affect the liability of railroad company: 26 Wis., 223; 98 Mass., 414; 13 Metc., 99.

Leaving land contiguous to railroad in its natural state, or making legitimate use of it, is not contributory negligence: S. & R., on Neg., 400–4–5; 20 Am. R., 357.

As to bills of exception see 21 Wend., 509; 2 Phil. on Ev., 1003–4–5; same 1007, citing 3 C. B. 496; 1 Ark. R., 24.

HAYMOND, JUDGE, delivered the opinion of the Court:

This is an action of trespass on the case brought by the plaintiffs against the defendant in the circuit court of the county of Brooke. The action was commenced on the 31st day of May, 1875, and the declaration filed at June rules of same year. The declaration filed contains two counts, and the material parts of each count discussed before us are as follows, viz: The plaintiffs in their declaration allege in the first count thereof that "on the 29th of October, 1874, and before and since that time, they were seized and possessed of a certain tract of land in said county of Brooke, in the State of West Virginia, situate on the waters of Harmon's creek, con-

taining about two hundred and forty acres, being the same farm owned by David Snyder, deceased, late of said county, and known as the Snyder Mill property, except that part of said tract of land which is now and has been for a long time owned by the defendant, consisting of a strip of said land one hundred feet in width, running through said farm, and which is used by said defendant for its railroad, except the ground on which the water grist mill stood, the said land of the plaintiffs being partly cleared and in a high state of cultivation, and the residue thereof being woodland, with valuable timber growing and being thereon, next prior to the grievances hereinafter named. And the said defendant for the last five years and more was and still is possessed and in the occupation of the said stip of land of one hundred feet in width, running through said land of plaintiffs as aforesaid, on which said land of defendant it has constructed a line of railroad, which it now operates and has operated for a long time past, to-wit: for more than five years last past, by continuously running trains of cars over said line of road, drawn by locomotives, propelled by fire and steam, and the said defendant, by reason of the possession of its said parcel of land, and its occupation and use for railroad purposes as aforesaid, of right ought to have prevented the dried grass, dried leaves and weeds, and other combustible matter from being and accumulating on its said line of road and its said land, to prevent the ignition of said combustible matter by fire from the locomotives of said defendant, used on its said railroad, and the spread of fire by the ignition aforesaid to and over the said lands of said plaintiffs, and doing damage thereto. Yet the said defendant, well knowing the premises, but contriving and wrongfully and unjustly intending to injure and aggrieve the said plaintiffs in that behalf whilst the said plaintiffs and defendant were so respectively possessed of their said respective tracts of lands as aforesaid, to-wit: on the 29th day of October, 1874, wrongfully and un-

justly suffered and permitted dried grass, dried weeds and dried leaves, and other combustible matter to be and accumulate on its said land and railroad aforesaid, and thereby on the day and year last aforesaid fire emitted and dropped from a locomotive of said defendant on said land and railroad of defendant, ignited the said dried grass, dried weeds, dried leaves and other combustible matter aforesaid, which caused a conflagration thereof, which said conflagration spread rapidly to and over the said adjoining lands of said plaintiffs to such extent that said conflagration destroyed about two and one-half miles of rail and board fence, worth $1,500.00, and growing timber and other forest timber, and injured the same to the extent and value of $1200.00, and burned and injured the pasture and growing wheat on said tract, and rendered the same useless to the amount of $300.00, &c.    The damages are laid at $7,000.00.

And the plaintiffs in the second count allege that on the 10th day of October, 1872, and long before that time, they owned a water grist mill, with two run of burs, complete in all its buildings and machinery, erected on the aforesaid tract of land of said plaintiffs, and contiguous to said railroad lands of said defendant and of the value of $4,000.00.    And the said defendant was on the said 10th day of October, 1872, and still is the owner of the aforesaid strip of land, and had at that time and has now constructed on its said land a line of railroad, which from then till now it operated by running trains of cars over said line of road, drawn by locomotives, propelled by fire and steam, and the said defendant by reason of its possession of said tract of land, and its occupation and use thereof for railroad purposes as aforesaid, during the time aforesaid of right ought to have kept the machinery, fixtures and locomotives on said railway in such condition as to prevent the emission and spread of fire to adjacent property from its said locomotives in such quantity as to ignite adjacent property. Yet the said defendant well knowing the premises, but

1877.
June Term.

Snyder et al.
v
P., C. & St. L.
Railway Co.

contriving and wrongfully and unjustly intending to in-jure and aggrieve the plaintiffs in that behalf, while, the said plaintiffs and the said defendant were so respective-ly possessed of their said property as aforesaid, to-wit: on the 10th day of October, 1872, wrongfully, unjustly and negligently suffered and permitted fire to emit and escape from a locomotive used and operated by said de-fendant on its said railroad, contiguous and near said water grist mill, by which said fire, emitted as aforesaid, lit upon and was communicated to said water grist mill, and ignited the said mill, by which said ignition, said mill was entirely consumed and destroyed, whereby the said plaintiffs by reason of said several grievances afore-said are greatly injured, and have sustained damage to the amount of $7,000.00 and hence they bring suit, &c.

At July rules, 1875, the defendant filed a general de-murrer to the declaration and also a plea of not guilty, to which the plaintiffs then replied generally. At the September term, 1876, of said circuit court the cause was tried before a jury, duly elected, tried and sworn, and the jury found the issue for the plaintiffs and asses-sed their damages at $1,110.00. But it fully appears by the record that before the case was called for trial before the circuit court, and upon the consideration of the de-murrer to plaintiffs' declaration, "upon a doubt being suggested by the court, the plaintiffs, with leave of the court, elected to proceed upon the first count of the dec-laration, and that alone, withdrawing the second; where-upon a jury was impannelled and the trial proceeded. And after the plaintiffs had read the deposition of M. K. Morris, and was proceeding with the examination of his first witness, the court decided that the different causes of action could properly be charged in the same declara-tion, and that the demurrer should be overruled; and, thereupon, the plaintiffs offered to proceed upon both counts, but the defendant objected on account of the said election of the plaintiffs, and the trial in fact was had upon the first count of the declaration, and not upon the

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

second. It also appears that the defendant, upon the rendition of the said verdict by the jury, moved the court for a new trial. The grounds specified upon which the motion for a new trial was grounded are the following, viz: "First—Because said verdict is contrary to law. Second—Said verdict is contrary to the evidence, and is not sustained by sufficient evidence. Third—Said verdict is excessive. Fourth—Because the court erred in its refusal to charge the jury as requested by the defendant's counsel, and also in the charge as given. Fifth—Said verdict was in favor of the plaintiffs, when by the law it should have been in favor of the defendant." On the 29th day of December, 1875, the circuit court made and entered in relation to, and upon the verdict of the jury, this order: "This day came again the plaintiffs, by their attorneys, and the defendant, by its attorney, and the motion of defendant made in said case at the last term of this court to grant a new trial was argued by counsel. And the court being of the opinion that the damages assessed by the jury are in excess of the damages sustained by the plaintiffs by the sum of $110.00 and that the verdict is warranted in other respects, it is, therefore, accordingly ordered that a new trial of said case be and is here allowed, unless the plaintiffs are willing to accept the sum of $1,000.00 in lieu of the verdict assessed by the jury at the last term of this court. And the plaintiffs here in court, by their attorney, being willing to accept the said sum of $1,000.00, in lieu of said verdict; it is, therefore, considered by the court, that the plaintiffs recover of the defendant the sum of $1,000.00, with their costs in this behalf expended." The first error assigned by the defendant in its petition for a writ of error, as having been comitted by the circuit court, is that "it was error in the circuit court to overrule the defendant's demurrer to the said declaration." It is proper that this assignment of error should be considered and determined, before considering the other errors assigned, and I, therefore, now proceed to consider and

determine it. It is settled with us, that ordinarily where a declaration contains more than one count, and there is simply a general demurrer to the declaration filed, and not a demurer to the declaration, and to each count thereof, if there is one good count contained in in the declaration, the demurrer must be overruled. This however, is perhaps not the rule where there is a misjoinder of actions. It appears however that the plaintiffs, when the case was called for trial, elected to proceed upon the first count of the declaration, and that alone : and withdrew and in effect entered a *nolle prosequi* as to the second count, and no trial was had upon the second count. Whether the second count was good in law or not, it is immaterial to consider. If the first count of the declaration is good, then there was no error in the court, in overruling the plaintiff's demurrer to the declaration in this case, as I do not think there was a misjoinder of actions in the declaration, as it was filed and especially as I now think, under the circumstances the demurrer should not be considered as applying to the second count, it having been withdrawn from the cause without objection from the defendant, and the first count only remaining. Under this view, I deem it unnecessary to inquire or consider whether the second count is good or not. I will, therefore, determine as to the sufficiency of the first count, in so far as substantial defects therein were suggested and discussed by the counsel who appeared before us, others not being brought to the attention of the Court, or discovered by it.

The first objection urged to the sufficiency of the declaration, suggested by the counsel for the defendant, is, that the declaration does not show upon its face any legal cause of action against the defendants, or in other words that the declaration does not show an omission of duty by the defendant, by which the injury to plaintiffs property was occasioned, for which the defendant is legally liable to the plaintiffs in damages. And second, and last, that the declaration is substantially defective

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

because it does not aver that the plaintiffs were not guilty of negligence which contributed to the burning of their property, or in the language of the defendant's counsel, that they "were not guilty of contributory negligence." It must be observed that the count in the declaration upon which the trial was had omits altogether the usual allegation of negligence in the use of the locomotive of the defendant; and in lieu thereof, and for the purpose of showing an omission of duty on the part of the defendant, alleges that the defendant "wrongfully and unjustly suffered and permitted dried grass, dried weeds, and dried leaves, and other combustible matter to be and accumulate on its said land and railroad aforesaid, and thereby on the day and year last aforesaid, fire emitted and dropped from a locomotive of said defendant on said land and railroad of defendant, ignited the said dried grass, dried weeds, dried leaves and other combustible matter aforesaid, which caused a conflagration thereof, which said conflagration spread rapidly to and over the said adjoining lands of said plaintiffs to such extent that said conflagration destroyed," &c. The duty of the defendant in this respect is thus described, viz: " And the said defendant by reason of the possession of said parcel of land, and its occupation and use for railroad purposes as aforesaid, of right ought to have prevented the dried grass, dried leaves and weeds, and other combustible matter from being and accumulating on its said line of road, and its said land, to prevent the ignition of said combustible matter by fire from the locomotives of the defendant, and on its said railroad and the spread of fire by the ignition aforesaid to and over the said lands of said plaintiffs, and doing damage thereto." The neglect of this duty is the gravamen of the count in the declaration; and for the purpose of testing its sufficiency in this respect, as well as to the failure of the plaintiffs to allege in their declaration that they " were not guilty of contributory negligence," the defendant, it seems, demurred to the said

count on which the trial was had. "By the common law of England, one who negligently set fire to anything on his own land, was liable for the destruction of the property of another person to which the fire extended, without any further fault on his part." Sherman & Redfield on Negligence, 3d ed., chapter 20, section 327, and authorities there cited in Note 1. In the case of *Kellogg* v. *The Chicago and Northwestern Railway Company*, 26 Wisconsin R., p. 223, it was held that "where sparks from defendant's engine set fire to dry grass, woods and bushes, suffered to remain and accumulate on land used for the railway, and the fire spreading upon plaintiffs' lands, destroyed his property, the question whether defendant was negligent in leaving its land in that condition, was properly left *to the jury*." In this case Dixon, C. J., who delivered the opinion of a majority of the court at page 228, says: "All the authorities agree that the presence of dry grass and other inflamable material upon the way of a railroad, suffered to remain there by the company without cause, is a fact from which the jury may find negligence against the company." The same Judge in the same opinion at page 233, also says "now the case of a railroad company is like the case of an individual. Both stand on the same footing with respect to their rights and liabilities. Both are engaged in the pursuit of a lawful business, and are alike liable for damage or injury caused by their negligence in the prosecution of it. Fire is an agent of an exceedingly dangerous and unruly kind, and though applied to a lawful purpose, the law requires the utmost care in the use of all reasonable and proper means to prevent damage to the property of third persons. This obligation of care, the want of which constitutes negligence according to the circumstances, is imposed upon the party who uses the fire, and not upon those persons whose property is exposed to danger by reason of the negligence of such party. In the case of *Salmon* v. *The Delaware, Lackawana and Western Rail-*

*road Company*, 20 American Reports 356, and 9 Vroom. (N. J.) 5, it was held that "a railroad company is bound to keep its track and contiguous land clear of material likely to be ignited from sparks issuing from its locomotive properly constructed and driven." This case was decided by the Supreme Court of New Jersey in 1875. Beasely, C. J., who delivered the opinion of the court in the case last cited at pages 357, 358, American Reports, uses this language: "Such duty appears to arise, by reasonable intendment, out of legislative grant to these corporations of the franchise to run their locomotives, in the absence of chartered rights, the use of such engines in the usual way, traversing whole districts, and throwing cinders and particles of fire on all sides over the lands in the vicinity of the road, would be, upon the ordinary principles of the law, undeniable nuisances. But, in view of the necessities of our advanced civilization, the use of such instruments has been legalized. In the name of the public, the landed proprietor has been compelled to submit to annoyance, and to yield up a portion of his abstract rights to the convenience of the community. But such sacrifice, on the part of the land-owner, under the enlightened policy of this State as well as that of all other civilized countries, has been made as light as practicable. If the land of the citizen has been taken from him by compulsion, it has been paid for; and when he has been subjected to other loss, he has received compensation. Nor is this all; he has another guaranty against oppression, which is, that the privileges held by these companies are all granted on the implied condition that they are to be so used as to occasion no unnecessary injury to the citizens. * * * That a railroad company should be exonerated from liability for fire unavoidably caused by sparks from their engine was reasonable enough; but that such exoneration should be given for fire originating from combustible matter unnecessarily being on their own land, would seem to be a superfluous concession. It should never be

forgotten that grants of this kind are to be construed strictly, and as intimated by Lord Langdale (*Colman* v. *Eastern Counties R. C.*, 10 Beav. 1), as it is the public interest to protect, as far as possible, the rights of every individual, such grants must always be carefully looked to, and must not be extended further than the Legislature has provided, or than is properly required for the purposes which it has sanctioned. There appears to be no reason whatever, why to the evident detriment of the owners of lands along a railroad track, a privelege should be conferred on such company to run their locomotives, surrounded 'on their own premises by materials so combustible as to be in constant danger of being fired by such engines when running under ordinary conditions. This precise question does not appear to have been very much considered by the courts. There are only two English cases which seem to touch directly upon the subject, the first being that of *Vaughan* v. *Taff Vale Railway Company*, 5 Hurl. & Norm., 679. In this case there were two counts in the declaration; the first count charging that the fire was communicated directly by sparks from the engine, the second count averred that the premises of the defendant were out of order, from having been left in a state liable to combustion and that thereby the fire complained of had occurred. In the Exchequer Chamber, Chief Justice Cockburn, in the course of his remarks, says: "As regards the second count if the facts alleged in that count had been established by the verdict of the jury, the defendants would have been liable." But the exigency did not require the point to be decided, so that all that can be claimed from this case is that it contains this weighty expression of opinion on the matter in question. The other case, which is clearly pertinent, is that of *Smith* v. *The London South Western Railway Company*, reported in L. R., 5 Com. Pleas, 89. The circumstances were that the workmen of the company had left for several weeks during the dry weather, the cuttings from the grass and hedges

Jun <sup>1877.</sup> rm.

Snyder *et al*
v.
P., C. & St. L.
Railway Co.

along the line of the road, which taking fire from an engine properly constructed and driven, the sparks and flames were carried over intervening lands to the property of the plaintiff. It thus appears that the only negligence alleged was the omission to keep the track free from inflamable matter ; and an examination of this report will show, that neither the counsel of the railroad company nor the court suggested a doubt with respect to the legal duty of the company to see that its premises were in such condition. The judgment in the case was in favor of the plaintiff." Upon consideration of the authorities which I have cited and others which were cited by counsel in argument, it seems to me upon reason and principle, as well as authority that the first objection made by the counsel for the defendant to the sufficiency of the plaintiff's declaration is not well taken. Negligence in the plaintiffs contributing to the loss is a defense at common law of which the defendant may avail himself the benefit of in a proper case. It is not necessary in a case of the character of this for the plaintiffs to allege any matter or thing not essential for him to prove at the trial, in order to make a *prima facie* case, and I apprehend that it cannot be successfully maintained that if the plaintiff proved his case as stated in in the declaration he would not be entitled to recover, unless, he also proved that he had been guilty of no negligence which contributed to the injury complained of. See the cases in 26th Wisconsin, 20th American Reports and 9th Vroom. above cited. *Hart* v. *Baltimore & Ohio Railroad Company*, 6 W. Va. R., 336. For these reason I think the second and last objection to the sufficiency of plaintiffs declaration by defendant's counsel is not well taken and that the circuit court did not err in sustaining the said count. It appears by the record in this case· that the "defendant excepted to certain rulings of the Court, and tendered certain bills of exception, No. — which are made part of record. But there appears to be but one bill of exception in the record and

in that bill of exceptions it is stated and appears and is recited at the end of the evidence given before the jury at the trial as follows: "And no further evidence was introduced by either of the parties, whereupon, the defendant's counsel asked the court to charge the jury as follows:

1st. Proposition—For a railroad company to permit grass and weeds to grow and remain upon its right of way, out side of its water table, and more than four feet from its track, through a sparsely settled region of country, and not near valuable buildings, when such grass and weeds are in such quantity and so small in growth that they cannot be mown, is not negligence; and that negligence is the want of ordinary care in this case, by which is meant such care as men of ordinary care and prudence use under like circumstances.

2d Proposition—Unless the plaintiffs' have proved by a preponderance of evidence that the defendant failed to keep its ground at the place where this fire started, or from where it spread upon the plaintiff's land, as free from grass or weeds or leaves as other railroads managed with care and prudence are kept, then the plaintiffs cannot recover in this action, and your verdict must be for the defendant.

3d Proposition—The burden of proof is on the plaintiff, and before he can recover in this action, he must satisfy you by a preponderance of evidence that the defendant was guilty of negligence in this matter at issue in this case, which is: Did the defendant, on the 29th day of last October, keep its railroad ground, at the place where the fire was on said railroad ground, as free from grass, weeds and leaves, or either of them, as men of ordinary care and prudence do under the same or similar circumstances?

4th Proposition—If the plaintiffs knew the place where this fire started, and from whence it spread to their land was a place where fire had often caught from sparks emitted from the defendant's locomotives in their ordinary use in passing, and permitted grass and weeds

1877.
June Term.

Snyder et al.
v.
P., C. & St. L.
Railway Co.

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

to grow and remain upon their lands adjoining said place to the same extent the defendant allowed grass and weeds to grow and remain upon its adjoining lands, the plaintiffs are guilty of contributory negligence, and cannot recover in this action.

5th Proposition—The question whether the locomotive was in good order or well managed is not in this case, and you will, therefore, wholly disregard all that has been heard or said upon that subject.

But the Court refused to give the first, second and fourth instructions so asked by the defendant, and the latter portion of the third. To which refusal the defendant, by its counsel, then and there excepted.

And the jury having brought in a verdict for the plaintiffs, the defendant, by its counsel, filed a motion to set aside said verdict for the reasons in said motion set forth.

And afterwards, and before the close of said term of court, said motion came on to be heard, and the court overruled said motion after reducing the verdict as in the record set forth and refused to set aside said verdict so reduced, to which several rulings and refusal to grant a new trial, the defendant by its counsel, excepted and prayed the court to sign and seal a bill of exceptions in that behalf, and order it to be made a part of the record in this case, which is accordingly done."

I am not aware of any rule or law that requires that there should be a separate bill of exceptions taken and signed to each ruling or opinion of the court objected to, to entitle the party excepting to an opinion or ruling to have such opinion reviewed and considered by the appellate court. It seems to me that exceptions of a party to opinions of the court, though they may be numerous, may safely and with propriety, be incorporated into one bill of exceptions .The bill of exceptions in this case, it seems to me, covers the refusal of the court to give instructions asked by the defendant's counsel, and that it was so intended by the circuit court. One of the rulings of the court was its refusal to give all the instructions asked, and the

1877.
June Term.

Snyder et al.
v.
P., C. & St. L.
Railway Co.

bill of exceptions states the part of the instructions the court refused to give to the jury, and in effect that to such refusal, the defendant by its counsel, then and there, excepted. I think, therefore, that, by the record, the action of the court in refusing the instructions is properly before us for review and consideration. It is also clear to my mind, that the court did not consider said instructions as being a whole, but as several distinct instructions asked from the court, and the action of the court as disclosed by the record, clearly supports this view. Entertaining these views, I will proceed to consider *seriatim* the several instructions refused by the court. *As to the first instruction asked by the defendant and refused.* It appears by the bill of exceptions, that one or more of plaintiff's witnesses testified substantially, that the fire complained of, commenced on the defendant's land in the dry grass which had grown on the land of the de fendant, and within about four feet of the defendant's road bed, opposite the land of the plaintiffs, in he declaration mentioned, and that the fire caught in the said dry grass from the defendant's locomotive, as it passed over the defendant's railway track, and that the fire so caused and commenced in the said grass, spread and was communicated from the point where it commenced on defendant's land, through and by the dry grass, weeds and leaves on defendant's land, to the dry grass, weeds and leaves on the land of the plaintiffs, and thereby to the woods, fencing, &c., of plaintiffs, and destroyed a large amount of fencing, growing wheat, timber and grass, upon the plaintiffs said land; and that said dry grass was about eight inches high when the fire caught; that the weather at the time of said fire, and for some time before, had been very dry, and had dried the grass there growing, and that the day the fire caught was quite windy, and the fire spread with great rapidity; and that the defendant had not mown or touched the grass which grew at the place where said fire caught, during the summer, or after the summer and before the fire. Some of the defend-

ant's witnesses testified that there was very little grass at and about the place the said fire caught, and through which it burnt, and what there was, was very short, and was a kind of fuz or poverty grass—had dried out—and could not be mown, and that there were no weeds or leaves. It may be remarked that there was no evidence before the jury tending to show that the neighborhood or point at which the fire caught on the defendant's land, was sparsely settled, and that no valuable buildings were near. This instruction was asked as a whole, and the court might properly have refused to give the instruction, for the reason that it assumes on its face a fact as being proved as to which there was no evidence before the jury. It also asks the court to say to the jury in effect that the permission by the defendant of a certain state of facts stated in the instructions, did not constitute negligence in the defendant. As to the heighth, quantity, and character of the grass and weeds grown at the point where the fire originated, and in which the fire commenced, there is a conflict between the evidence of the plaintiffs and defendant. But there is no conflict in the evidence as to the fact that the fire commenced in the dry grass on the defendant's land, about four feet from its road bed. Generally what particular facts constitute negligence, is a question of fact for the determination of the jury from all the evidence before them bearing upon the subject, according to their judgment rather than a question of law for the determination of the court. In this case the question of negligence is one of fact for the consideration of the jury. The most the court can do ordinarily in cases of this character where there is a contrariety of evidence, and the question of care or negligence depends upon consideration of a variety of circumstances, is to define the degree of care and caution required, and leave to the practical judgment and discretion of the jury the work of comparing the acts and conduct of the party or parties concerned with the duties required of them under such circumstances. There

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

may be some cases where the question of negligence may be properly one of law for the court; but such cases always present some prominent act, not dependent upon surrounding circumstances for its quality, and in regard to the effect and character of which no room is left for ordinary minds to differ. The *Baltimore & Ohio R. R. Co.* v. *Fitzpatrick, by &c.*, 35 Md. R., 32, 44. Negligence is a relative term, and is very much dependant upon the particular facts and circumstances of each case that occurs. What may be ordinary or reasonable care in one state of the case, may be gross negligence in another.

It is not proper to separate a few facts from their connection with others and make them the basis of an instruction of the character of the one under consideration. Such a course would tend to mislead the jury ; and if the practice were sanctioned, each separate fact might be made the basis of a similar instruction. See *B. & O. R. R. Co.* v. *Boteler*, 38 Md. R., 586. While the court has the power to set aside the verdict of a jury and grant a new trial in proper cases, still it is not proper for the court to derogate from the proper province of the jury, and in this particular case if the court had given said first instruction as asked by the defendant's counsel it is clear to my mind it would have, without justification or authority, assumed unto itself the proper province of the jury. For these reasons, and others unnecessary to refer to, the circuit court did not err in refusing to give to the jury the first instruction asked by the defendant's counsel.

As to the second instruction asked by the defendant's counsel. It is clear to my mind that the circuit court did not err in refusing to give this instruction. The standard by which the defendant's conduct was to be measured, was not the conduct of other railroads, certainly not their usual conduct. Because if that were so, the measure of protection to which land owners are or would be entitled, might and would be the custom of railroads established and practiced among themselves for

their benefit, however unjust and injurious to the prop-
erty of others, instead of the law.    Again, the degree of
care which the law requires in order to guard against in-
jury to others, varies greatly according to the circum-
stances of the case.    When the fire occurred, which
caused the injury and destruction of the property of the
plaintiffs mentioned in this cause, it was a very dry time,
and there was much wind.  At such time greater vigilance
was demanded from the defendant than might ordinarily
have been required.    *Grand Trunk R. R. Co.* v. *Rich-
ardson et al.* 1 Otto. U. S. R. pp. 454, 469, 470.

As to the refusal of the court to give the latter clause
of the third instruction asked by the defendant's coun-
sel.    The clause of this instruction which the court re-
fused to give to the jury is as follows, " which is :   Did
the defendant, on the 29th day of last October, keep its
railroad ground, at the place where the fire was on said
railroad ground as free from grass, weeds and leaves, or.
either of them, as men of ordinary care and prudence do
under the same or similar circumstances."    The declara-
tion alleges that the fire occurred on the 29th day of
October, prior to the trial.

The third instruction aforesaid is intended to inform
the jury of the meaning of the issue they were sworn to
try so far as the issue involved negligence on   the
part of the defendant, and an instruction of this charac-
ter if given should propound and declare the issue in
such language and so fully as not to tend to confuse or
mislead the minds of the jury ; but on the contrary
thereof, to communicate to the jury a fair understand-
ing of what is involved in the issue in respect to negli-
gence on the part of the defendant in the case.    Upon
consideration of the subject it seems to me that the latter
clause of said third instruction ought not to have been
given.    It is clear to my mind that it is not sufficiently
full and explicit, that if given as asked it might and
probably would have mislead the jury.    It seems to me
that the true question involved in the issue touching the

matter of negligence on the part of the defendant to be determined by the jury was, *from the evidence and all the circumstances and surroundings, including the dryness of the time, did the defendant permit such an accumulation of grass, weeds or leaves of a combustible nature within its right of way at the point where said fire occurred, exposed to ignition by the engines, as would not be permitted or done by a cautious and prudent man upon his own premises if exposed to the same hazard from fire, as the accumulation of the dry grass, weeds or leaves upon the said right of way of the defendant.* Kesee v. The Chicago and N. W. R. R. Co., 30th Iowa R., 78 ; 6 American R., 643 and opinion of Cole, Chief Justice, 645. It seems to me also that the words "or either of them" contained in the latter clause of said third instruction are not proper and are out of place in the connection in which they are used.

As to the fourth instruction asked by the defendant and refused by the court. In the case of Kellogg v. The C. & N. R. R. Co., 26th Wisconsin, it was held, and as I think justly and properly, that "it was error as against defendant, to submit to the jury the question whether plaintiffs was also negligent in permitting dry stubble and grass to remain on his land, and in not having plowed a sufficient strip adjoining the railway to prevent the spread of fire. Persons occupying farms along railroads are entitled to cultivate and use them in the manner customary among farmers, and may recover for damages by fire resulting from the negligence of the railway company, although they have not plowed up the stubble, or taken other like unusual means to guard against such negligence. Negligence of the plaintiffs in such cases which precludes a recovery, is when in the presence of a *seen* danger (as when the fire has been set) he omits to do what prudence requires to be done under the circumstances for the protection of his property, or does some act inconsistent with its preservation. Where the danger is *not seen*, but anticipated merely, or

dependant on future events (such as the future continu-
ance of defendant's negligence) plaintiff is not bound to
guard against it by refraining from his usual course (be-
ing otherwise a prudent one) in the management of his
property and business.   In the exercise of his lawful
rights every person has a right to presume that every
other will perform his duty and obey the law, and it is
not negligence for him to assume that he is not exposed
to a danger which can only come to him through a dis-
regard of law on the part of some other person.   The
maxim, *causa proxima non-remota spectatur,* is not con-
trolled by time or distance, nor by the succession of
events.   An efficient, adequate cause being found, must
be deemed to be the true cause, unless some other cause
not incidental to it, but independent of it, is shown to
have intervened between it and the result.   The maxim
includes liability for all actual injuries which were the
natural and probable result of the wrongful act or omis-
sion complained of ; or more *likely* to ensue from it
under ordinary circumstances." In this case, Dixon,
Chief Justice, delivered the opinion of a majority of
the court, and I refer to it as being an able and interest-
ing opinion in support of the propositions above stated.
See also, *Cook* v. *Champlain Transportation Company,* 1
Denio, 91 ; *Vaughan* v. *Taff Vale Railway Company,* 3
Hurl. & Nor., 743 ; *Same* v. *Same,* 5 *id.,* 679 ; *Martin* v.
*Western Union Railroad Company,* 23 Wis., 437 ; *Piggot*
v. *Eastern Counties Railroad Company,* 54 E. C. L., 228 ;
*Smith* v. *London & Southwestern Railroad Company,*
Law Reports, 5 C. P., 98 ; *Vaughan* v. *Menlove,* 7 C. &
P., 525 (32 E. C. L. 613); *Hervey* v. *Nourse,* 54 Me.,
256 ; *Turberville* v. *Stampe,* 1 Ld. Raym., 264 ; S. C. 1
Salk., 13 ; *Pontam* v. *Isham, id.,* 19 ; *Field* v. *N. Y. C.
R. R.,* 32 N. Y. 339 ; *Batchelder* v. *Heagen,* 18 Me. 32 ;
*Barnard* v. *Poor,* 21 Pick., 378 ; *Fero Buffalo & State
Line R. R. Co.,* 22 N. Y. 259 ; *Fremantle* v. *The London
& Northwestern R. R. Co.,* 100 E. C. L. 88 ; *Hart* v.
*Western Railroad Co.,* 13 Met. 99 ; *Ingersoll* v. *Stock-*

*bridge & Pittsfield R. R. Co.*, 8 Allen, 438 ; *Perley* v. *Eastern Railroad Co.*, 98 Mass. 414 ; *Hockset* v. *Concord Railroad*, 38 N. H. 242 ; *'Mcready* v. *Railroad Co.*, 2 Stobh. Law R. 356 ; *Cleaveland* v. *Grand Trunk Railway Co.*, 42 Vt. 449 ; 1 Bl. Com., 131 ; Com., Dig. Action for Negligence (A. 6); *Salmon* v. *Delaware, Lackawanna & Western Railroad Co.*, 9 Vroom. 5 ; 20 American Reports 356. These cases are cited in support of the proposition decided in the case in 26 Wis. above referred to, in relation to contributory negligence. In the case in 26 Wis., Chief Justice Dixon says, at pages 233, 234 and 235—"Third persons are merely passive, and have the right to remain so, using and enjoying their own property as they will, so far as responsibility for the negligence of the party setting the unruly and destuctive agent in motion is concerned. If he is negligent and damage ensues, it is his fault and cannot be theirs, unless they contribute to it by some unlawful or improper act. But, the use of their own property as best suits their own convenience and purposes, or as other people use theirs, is not unlawful or improper. It is perfectly lawful and proper, and no blame can attach to them. He cannot, by his negligence, deprive them of such use, or say to them " do this or that with your property, or I will destroy it by the negligent and improper use of my fire." The fault, therefore, in both a legal and moral point of view, is with him, and it would be something strange should the law visit all the consequences of it upon them. The law does not do so, and it is an utter perversion of the maxim, *sic utere tuo*, &c., thus to apply it to the persons whose property is so destroyed by the negligence of another. It is changing it from "so use your own as not to to injure another's property," to "so use your own that another shall not injure your property," by his carelessness and negligence. It would be a very great burden to lay upon all the farmers and proprietors of lands along our extensive lines of railway, were it to be held that they are bound

1877.
June Term.

Snyder *et al.*
v.
P., C. & St. L.
Railway Co.

to guard against the negligence of the companies in this way—that the law imposes this duty upon them. Always burdensome and difficult, it would, in numerous instances be attended with great expense and trouble. Changes would have to be made in the use and occupation, and sometimes the use abandoned, or at least all profitable use. Houses and buildings would have to be removed, and valuable timber cut down and destroyed. These are in general very combustible, especially at particular seasons of the year. The presence of these along or near the line of the railroad would be negligence in the farmer or proprietor. In the event of their destruction by the negligence of the company, he would be remediless. He must remove them, therefore, for his own safety. His only security consists in that. He must remove everything combustible from his own land in order that the company may leave all things combustible on its land and exposed without fear of loss or danger to the company from being ignited at any moment by the fires from its own engine. If this duty is imposed upon the farmers and other proprietors of adjoining lands, why not require them to go at once to the railroad and remove the dry grass and other inflamable material there? There is the origin of the mischief, and there the place to provide securities against it. It is vastly easier, by a few slight measures and a little precaution, to prevent the conflagration in the first place than to stay its ravages when it has once begun." I am fully aware that there are decisions by several Supreme Courts of States of the Union contrary to the principles so ably argued and expounded by Chief Justice Dixon. I have examined several of these cases and considered them, and given them such weight, as they are entitled to and after so doing, I feel convinced and satisfied in my judgment and conscience that the principles settled in the said case in 26th Wisconsin Reports and the case cited in 9th Vroom., 5, and 20th American R., 356, touching the question of contributory negligence are

just and correct. In the said case in 9th Vroom., and

20th American R., it was held that, "a person owning
land contiguous to a railroad is not obliged to keep the
leaves falling from his trees from being carried by the
wind to such railroad; nor to keep his lands clear of
leaves and combustible matter, nor on failure to perform
such acts does he become contributory to the produc-
tion of a fire originating in the carelessness, on its own
land of a railroad company." If the place where this fire
started and from whence it spread was a place where
fire had often caught from sparks emitted from the de-
fendant's locomotives in their ordinary use in running, it
tends to show a negligent habit on the part of the de-
fendant in suffering combustible material to accumulate
on its land at that place instead of amounting to a reason
why the plaintiffs should not recover although the
plaintiffs knew of such fires. *G. T. R. R. Co.* v. *Richard-
son et al.*, 1st Otto's U. S. Reports, 454. Upon the
whole I am of opinion that the circuit court did not err
in refusing to give said fourth instruction asked by the
defendant's counsel. It does not affirmatively appear by
the record, what, if any instructions the court did give to
the jury, and if the court did give any instructions to
the jury to which the defendant's counsel objected the
instruction as given by the court should have been pro-
perly excepted to by the defendant's counsel, and the ex-
ception made a part of the record in the usual way. In
this case the evidence adduced by the plaintiffs and de-
fendant before the jury at the trial is certified by the
court and not the fact proven, for the reasons doubtless
that the evidence of witnesses of plaintiffs and defendant
in some material particulars was conflicting, and in deter-
mining whether the court below erred in overruling the
motion of the defendant for a new trial, this Court as a
general rule excludes from its consideration, so much of
the parol evidence of the party asking a new trial, as
is materially in conflict with the evidence of the other
party. I see no reason why this rule should not be ap-

plied in this case, as is generally done in this State and Virginia, as this Court has heretotore more than once determined. Applying this rule to the evidence of the parties in this cause, it seems to me there was evidence before the jury tending to prove that the said fire was caused by the negligence of the defendant, as in the declaration complained, and that the verdict of the jury was authorized by evidence before them, and that the court did not err in refusing to set aside the verdict of the jury as rendered by the court, upon the ground that it was contrary to the law and evidence; nor upon the ground that it was excessive; nor upon any other ground discovered by the record, to which my attention has been directed.

For the foregoing reasons, the judgment of the circuit court of the county of Brooke, rendered in this cause on the 29th day of December, 1875, must be affirmed and the defendants in error recover against the plaintiff in error, their costs in this Court in this cause expended, and damages according to law.

JUDGMENT AFFIRMED.